UNITED STATES DISTRICT COURT
SOUTHERN DISTRICT OF INDIANA
EVANSVILLE DIVISION

FILED
U.S. DISTRICT COURT
EVANSVILLE DIVISION

2016 MAR 17 PM 4:24

SOUTHERN DISTRICT
OF INDIANA
LAURA A. BRIGGS
CLERK

| | |
|---|---|
| LORETTA M. DUNCAN )<br>)<br>Plaintiff, )<br>V. )<br>)<br>VECTREN CORPORATION )<br>)<br>Defendants. ) | 3:16-cv-031-RLY-MPB<br>CAUSE NO: _____ |

## COMPLAINT AND DEMAND FOR JURY TRIAL

### Nature of Case

1. This is an action brought by Plaintiff, Loretta M. Duncan ("Plaintiff"), against Defendant, Vectren Corporation ("Vectren"), alleging violations of the Americans with Disabilities Act of 1990, as amended, ("ADA") 42 U.S.C. §12101 et seq. to correct and remedy Vectren's discriminatory employment practices and to provide appropriate relief to Plaintiff who was adversely affected by such practices.

2. As alleged in more particularity in this Complaint, Vectren violated the ADA by disparate treatment of plaintiff in rates of compensation, failure to engage in the interactive process, failure to provide reasonable accommodations, administering attendance plans that do not allow for exceptions for disability, termination due to disability and in retaliation for her asserting her rights under the ADA.

## Parties

3. Plaintiff is a citizen of the United States and, at all times relevant to this litigation, resided in Henderson County, State of Kentucky.

4. Vectren is an Indiana Corporation, which maintains offices and conducts operations within the geographical boundaries of the District Court of the Southern District of Indiana.

## Jurisdiction and Venue

5. Jurisdiction is conferred on this Court over the subject matter of this litigation pursuant to 28 U.S.C. § 1331 and 42 U.S.C. § 12117.

6. Vectren is an "employer" as that term is defined by 42 U.S.C. § 12111(5)(A), has over one thousand employees, and made a net profit of over $260 million in 2015.

7. At all times relevant to this action, Plaintiff was an "employee" as that term is defined by 42 U.S.C. § 12111(4).

8. Plaintiff is a "qualified individual with a disability" as defined by the ADA, 42 U.S.C. § 12111(8).

9. Plaintiff exhausted her administrative remedies by timely filing a Charge of Discrimination against Vectren with the Equal Employment Opportunity Commission ("EEOC"), claiming discrimination based on disability, a copy of which is attached as Exhibit 1.

10. Plaintiff received the EEOC's Right to Sue Notice on or about December 26, 2015 (a copy of which is attached as Exhibit 2) and filed this complaint within ninety (90) days of receipt of said notice.

11. All of the events concerning this case have arisen in the geographical area of the Southern District of Indiana, thus venue is proper in this Court.

## Factual Allegations

12. In May of 2008, Plaintiff began working as a Gas and Electric Operations Assistant at Vectren, through Kelly Services. That same year, Vectren gave Plaintiff a five-star rating in every category on the assessment sent to Kelly Services, which is the highest ranking possible.

13. In June of 2010, Plaintiff was hired as a Gas and Electric Operations Assistant, which is the same position that she had held for over two years.

14. Plaintiff's direct supervisor was, Darrin Aldridge ("Aldridge"), from May, 2008 through September, 2015. In Plaintiff's performance review for the year 2010, Aldridge rated Plaintiff as Meets Expectations, and made the following comments:

> "Loretta is a key contributor to the Evansville Metro Operations group. She has built a great rapport with local supervision and scheduling groups. Her attention to detail has added value to the work we are tracking and has made improvements to our processes. Loretta also is a backup for other district offices when staffing is low for administrative needs."

15. In Plaintiff's performance review for the year of 2011, Aldridge rated Plaintiff as Meets Expectations+ and made the following comments:

> "ME+ Loretta is a major support to our Operations Supervisor Group in the Evansville Metro Operations area. She continues to change with our

business needs and adapts well to new processes. She was very instrumental in 2011 with the new Centralized Scanning Group and streamlining processes. Loretta has always absorbed the extra work when needed and continues to assist other district offices for administration needs."

16. Vectren's Human Resources Department has lost Aldridge's review comments for the years 2012 and 2013. However, Plaintiff has the original hand-written note from Aldridge for 2012 stating the following: "Loretta – ME+ – 3.5% – 35,021 – 88% 40,000 Benchmark" and Plaintiff received a Meets Expectations rating in 2013.

17. In Plaintiff's review for the year 2014, Aldridge's comments were as follows:

> "In regards to Loretta's 2014 performance, she has continued to drive for results and was involved in a week long Kaizen event that was specific to the roles she is responsible for in the Operations group. She has offered ideas and looks for better ways to complete tasks.
>
> Two areas that need improvement are connecting/communicating and honor/character. As mentioned by Loretta, two events that occurred last year were not acceptable and are areas to improve. Since the most recent event in October, she has made improvements."

The two incidents Aldridge is referring to in his comments above were (1) an email that Plaintiff sent to the four Kelly Services employees warning them that their jobs might soon be eliminated; and (2) the taking of a printer/scanner to her residence, which is covered in greater detail in Paragraphs 24 through 29 of this Complaint.

18. Aldridge was aware of Plaintiff's problems with Depression before her formal hiring in June of 2010, and until October 24, 2014 had always been willing to allow Plaintiff to have some flexibility in her schedule. Plaintiff routinely came in

after 8:00 a.m. and worked late two or three days a week to make up any missed time. Plaintiff routinely stayed until 7:00 or 8:00 p.m. Because of this flexibility, Plaintiff not only was able to work her 40 hours per week, but also routinely worked overtime. During 2013, Plaintiff worked in excess of 110 hours of overtime. Due to budget issues, all overtime for admins in the Southwest Division was eliminated early in 2014.

19. Plaintiff's position has always had a workload in excess of what one employee could accomplish. This was a known issue and was supposed to be alleviated with an eventual reduction in the amount of required paperwork. This reduction did not occur until October 2015, with the elimination of the paper leak report form.

20. Plaintiff's department has hired two additional administrative assistants to handle the workload formerly assigned to plaintiff alone, one in 2014 and the other in 2015.

21. Plaintiff has met or exceeded Vectren's legitimate expectation of work performance at all times.

22. During 2014, Plaintiff began having stroke-like symptoms (including blurred vision, difficulty with speech, numbness on one side of her face and one hand) and more severe symptoms of Depression, both of which caused her to be absent from work.

23. Plaintiff had to go to the emergency room on one occasion and had to go through a comprehensive battery of tests for the stroke-like symptoms. These

tests were inconclusive; however, a change in Plaintiff's medications caused them to cease.

24. On October 24, 2014, Plaintiff was called to a meeting with Mike Singer, the Southwest Division Manager ("Singer"); Chris Harlow, Human Resources Specialist ("Harlow"); and Darrin Aldridge, Southwest Supervisor ("Aldridge"). The purpose of this meeting was to discuss Plaintiff's absences and the taking of a printer/scanner to her home. During this meeting, Plaintiff informed Aldridge, Singer, and Harlow that she had been diagnosed with Depression, by a psychiatrist near Chicago, over 15 years ago. This psychiatrist was the first doctor to prescribe anti-depressant medications for Plaintiff, and that she had been able to have her family physician prescribe these medications since moving to this area.

25. Furthermore, during the October 24 meeting plaintiff tearfully told Singer and Harlow that her absences were due to the increasing severity of her Depression symptoms, two of which were uncontrollable weeping and difficulty with concentration. Aldridge was already aware of these problems.

26. Additionally, Plaintiff explained to Aldridge, Singer, and Harlow that she had taken the printer/scanner to her home, and worked from home, because of the difficulties with concentration caused by the worsening Depression.

27. The printer/scanner which Plaintiff had taken to her home, had been purchased by the T & D Department in 2012 for approximately $300. Said printer was purchased for plaintiff's use, was located at Plaintiff's desk, and was used exclusively by Plaintiff.

28. Despite knowing the reasons for Plaintiff's actions, Plaintiff received a formal disciplinary warning at the October 24, 2014 meeting.

29. With full knowledge of Plaintiff's disability (Depression) and that her disability was causing her to have difficulty with concentration, Vectren made no attempts to engage in the interactive process during the October 24, 2014 meeting.

30. Sometime during the week of March 9, 2015, Plaintiff had her annual Performance Review for 2014 with Aldridge, and was informed that she was receiving a "Needs Improvement" rating, and that she would receive a 0% raise that year.

31. Other similarly situated employees, who weren't disabled, were treated more favorably than Plaintiff.

32. During the 2014 review, Aldridge stated that the decision to grant 0% raise, involved both Singer and Darin Carroll ("Carroll"), who is Singer's boss and a Director at Vectren, and that Aldridge had not recommended a 0% raise.

33. Also, in the review meeting, Plaintiff requested verbally that she be allowed to work part-time from home and have a flexible schedule to accommodate her problems with Depression.

34. On Friday, March 13, 2015, Plaintiff put her request for a reasonable accommodation in writing with an email to Aldridge. Copy attached as Exhibit 3.

35. On March 18, Plaintiff was called to a meeting with Aldridge, wherein he stated that her request was "denied," and that she "would not be granted any accommodation."

36. After the March 18 meeting, Plaintiff gave to Aldridge copies of the EEOC guidelines addressing mental disabilities and reasonable accommodations.

37. Plaintiff was emotionally distressed during and after the March 18 meeting with Aldridge and went home sick.

38. Plaintiff called her physician's office immediately after the March 18 meeting and was told to come in right away, which she did. At this office visit Plaintiff saw, Cara Reising, the Nurse Practitioner who had been treating Plaintiff's Depression. Plaintiff was so upset at this appointment that she had difficulty speaking. Plaintiff requested a letter confirming her problems with Depression and her need for reasonable accommodation.

39. Plaintiff delivered the letter from Cara Reising (dated March 18, 2015) to Singer on Monday, March 23, 2014. Copy attached as Exhibit 4.

40. Plaintiff was unable to sleep for most of the night on March 18 and called Aldridge the next morning to inform him of this; and that she was too ill to come to work and would likely not be capable of doing so for a while. During this conversation, Plaintiff requested a written response to her request for a reasonable accommodation. Additionally, Aldridge told Plaintiff that she would need to request medical leave under the Family Medical Leave Act ("FMLA").

41. Plaintiff spent most of that day, Thursday, March 19, in bed trying to recover from the traumatic events of the previous day.

42. On Friday, March 20, Plaintiff phoned the Human Relations Office in Evansville, Indiana (which is the Indiana State Agency tasked with enforcing

discrimination laws) to seek their advice. They set an appointment for Plaintiff to come into the office on Monday, March 23. 2015.

43. Plaintiff delivered her signed request for FMLA to Aldridge on March 23, 2015; however, Vectren did not notify plaintiff regarding the status of her FMLA qualification until after the second request for FMLA on April 6, 2015, which is well beyond the five-day deadline required by the FMLA.

44. Plaintiff met with Gino Meriweather, with Human Relations on Monday, March 23, 2015, and he recommended that she give Vectren the letter from her doctor. He told Plaintiff that he believed that once Vectren had medical confirmation of her Depression and need for accommodation, that they would then be willing to grant her a reasonable accommodation. Plaintiff did this the same day, and again requested a written response to her request for accommodation, this time from Singer, with Carroll also present.

45. Plaintiff delivered the FMLA paperwork to Dr. R. Chad Perkin's office on the morning of March 23, 2015. A nurse from Dr. Perkins' office phoned Plaintiff to inquire about her status and discuss the FMLA papers. At that time, Plaintiff believed that she could recover with some time off. Also, that she believed that a family reunion trip planned for the first week in April would help with her worsened Depression symptoms. They set a date for Plaintiff's return to work of Monday, April 6, 2015.

46. Plaintiff's Depression did not improve and, in fact worsened quite substantially. She phoned her doctor sometime between March 23 and March 27,

2015 to let them know this, and that she would probably need to adjust her medication due to the severity of symptoms. Plaintiff also asked for a recommendation on a counselor.

47. The nurse phoned Plaintiff back that same day and informed Plaintiff that Cara Reising recommended a complete change of medication from Lexapro, to Brentillix. Plaintiff was to taper off of her Lexapro, from 40 mg to 20 mg for one week, then from 20 mg to 10 mg the next week. The third week Plaintiff was to start Brentillix at 10 mg and increase to 20 mg the fourth week.

48. Plaintiff called to schedule an appointment with the counselor and the first available opening was May 1, more than one month away. Plaintiff saw Margaret Svec, a counselor with the group Within Sight, LLC from May 1, 2015 through August 14, 2015.

49. Plaintiff spoke by telephone with Renee Palmer ("Palmer"), Senior Human Resources Specialist on or about April 1 regarding the denial of reasonable accommodation. During this conversation, Palmer stated that she would have to have "a broader conversation" with Aldridge, Singer, and Carroll.

50. Plaintiff received Vectren's formal response to her request for accommodation via email on April 2, 2015. Copy attached as Exhibit 5.

51. Vectren's formal, written response to her request for accommodation denied any kind of accommodation and did not suggest any room for compromise.

52. Due to the planned change in Plaintiff's medication (which would take a month) and continued problems with Depression, Plaintiff submitted revised

FMLA papers to Singer on April 6, which changed her return to work date to May 4, 2015 (Copy attached as Exhibit 6). Plaintiff's doctor submitted the Physician Certificate papers which requested intermittent FMLA, after her return to work. Copy attached as Exhibit 7.

53. Plaintiff returned to work on May 4 and had the following schedule for that week:

| | | |
|---|---|---|
| Monday, 5/4/15 | 9:00 am to 6:00 pm | Worked thru lunch |
| Tuesday, 5/5/16 | 9:45 am to 5:15 pm | Worked thru lunch |
| Wednesday, 5/6/16 | 9:45 am to 5:45 pm | Worked thru lunch |
| Thursday, 5/7/16 | Sick with stomach flu (Threw up while driving car evening before) | |
| Friday, 5/8/16 | 10:00 am to 5:30 pm | Worked thru lunch |

54. Plaintiff was called to a meeting with Aldridge and Harlow on May 12, 2015. At this meeting, Harlow told Plaintiff that she "would be terminated if she worked past 5 p.m."

55. Also during the May 12 meeting, Plaintiff was informed that anytime she arrived later than 8:00 a.m., she would be required to take unpaid FMLA, and would not be allowed to make up the time missed by working through lunch or staying later.

56. Plaintiff confirmed the events of this meeting in an email to Aldridge and Harlow, with copies to Singer, Carroll, and Palmer, on May 12, 2015. Copy attached as Exhibit 8.

57. After these events, Plaintiff began having problems with anxiety, for which Cara Reising prescribed Klonipin. Plaintiff had not previously had problems with anxiety nor been prescribed anxiety medication.

58. After approximately one year, filing an EEOC claim, suffering a Major Depressive Episode, and severe emotional pain and distress, on October 12, 2015, Vectren finally engaged in the interactive process. A week or so later Vectren did finally grant reasonable accommodations to Plaintiff. They allowed Plaintiff a later start time of 9:00 a.m. and purchased Bose Noise Reduction Headphones, although they still insisted that Plaintiff stop working at 5 p.m. necessitating her to work through lunch every single day to achieve her eight-hour work day.

59. Beginning on January 1, 2016, Plaintiff's new supervisor, Amy Robbins, in consultation with Singer, implemented a new attendance plan for the admins in the Southwest Division. Said attendance plan allowed for a maximum of 5 occurrences/40 hours (including any sick time), required a two-day notice before allowing vacation of any length (hours or days), and did not allow for any exceptions for disability. Copy attached as Exhibit 9.

60. This new attendance plan was put into action with malice, deliberate indifference, and/or reckless disregard for plaintiff's well-being and rights under the ADA. Said plan was put in place specifically because Vectren believed that it could cause Plaintiff to incur more than five occurrences before her FMLA renewed in March of 2016, allowing them to terminate her employment for cause. This was done with the full knowledge that Plaintiff's Depression worsens in the winter months, due to lack of sunshine. At this time, Vectren also took away (for no good reason) accommodations which had previously been allowed to Plaintiff. Specifically, the flexibility to arrive earlier than 9:00 a.m. on days when Plaintiff

was having a good day, and disallowing Plaintiff's use of accrued vacation or personal time when she was having a particularly bad day.

61. In an attempt to prevent occurrences due to Depression before Plaintiff's FMLA renewed in March, Plaintiff scheduled one vacation day per week from January 25, 2016 through February 29, 2016.

62. After all of the obstructions, delays, denials, and changes in attendance plans had not succeeded in forcing the voluntary abandonment of her rights under the ADA, abandonment of her job, or termination for cause, Vectren wrongfully terminated Plaintiff's employment on March 11, 2016, during what was supposed to be a performance review, but where no evaluation of Plaintiff's performance occurred. The only reason offered was that plaintiff was being given a "Needs Improvement" for 2015 because of a "bad attitude."

63. Vectren has had many opportunities to avoid this lawsuit but has chosen to be cold and calculating, and has taken a hard line of action at every turn. These opportunities include:

    a. Opportunity to engage in the interactive process at the October 24, 2014 meeting, when Harlow and Singer first learned of Plaintiff's disability and problems caused thereby;

    b. Opportunity to engage in the interactive process after the verbal request for accommodation made in Plaintiff's performance review in March, 2015;

    c.    Opportunity to engage in the interactive process after the written request for accommodation on March 13, 2015;

    d.    Opportunity to respond to the letter from Plaintiff's doctor confirming Plaintiff's Depression, and recommending accommodations, dated March 18, 2015 and received on March 23, 2015;

    e.    Opportunity to respond positively to the EEOC complaint, which was filed on April 20, 2015;

    f.    Opportunity to engage in mediation recommended by the EEOC in April, 2015. Plaintiff signed and returned the agreement to mediate on April 28, 2015. Copies of this agreement and confidentiality agreement are attached as Exhibit 10. Vectren refused to agree to mediation; and

    g.    Opportunity to accept a very reasonable offer of settlement made by the EEOC on behalf of Plaintiff in December, 2015.

<div align="center">LEGAL ALLEGATIONS</div>

64.    Vectren has willfully and intentionally, with malice, deliberate indifference, and/or reckless disregard for Plaintiff's rights, engaged in unlawful employment practices under the ADA by failing to give her a raise in salary during 2015, and treating other similarly situated non-disabled employees more favorably. The CFR states, in part:

> "§1630.4    Discrimination prohibited.
>
> (a) In general-(1) It is unlawful for a covered entity to discriminate on the basis of disability against a qualified individual in regard to: . . .
> (iii) Rates of pay or any other form of compensation and <u>changes in compensation</u>;"

65. Vectren has willfully and intentionally, with malice, deliberate indifference, and/or reckless disregard for Plaintiff's rights, engaged in unlawful employment practices in violation of the ADA, by denying, obstructing, and delaying reasonable accommodations, and failing to engage in the interactive process for approximately one year.

66. Vectren willfully and intentionally, with malice, deliberate indifference, and/or reckless disregard for plaintiff's health and well-being, caused her emotional distress which resulted in Plaintiff suffering a Major Depressive Episode, and being unable to work from March 19, 2015 until May 4, 2015.

67. As a result of Vectren's violations of the ADA, Plaintiff suffered harm, and pain and suffering, including but not limited to thoughts of suicide, feelings of worthlessness, loss of enjoyment of life, anxiety, fear, and other symptoms of depression and anxiety. Plaintiff continues to suffer harm as a result of Vectren's wrongful termination on March 11, 2016.

68. Vectren has shown a pattern of unlawful, willful, and/or reckless disregard for both discrimination and other employment laws. These practices have forced Plaintiff to resort to the burdensome, arduous, emotionally damaging, time-consuming, and expensive tasks of seeking relief from State Agencies, the EEOC, and the Courts, for equitable treatment under the law.

69. Plaintiff is not the only employee to suffer harm from Vectren's pattern of unlawful, willful, and/or reckless disregard for discrimination and employment laws. These practices force employees to resort to the burdensome, arduous,

emotionally damaging, time-consuming, and expensive tasks of seeking relief from States Agencies, the EEOC, and the Court, for equitable treatment under the law. Only after victims take these actions, does Vectren submit to the requirements of the law. If an employee can survive all of the denials, delays, and obstructions, and has the courage and strength to actually file a lawsuit, then Vectren simply settles the lawsuit for a few thousand dollars and continues its discriminatory and unlawful practices with impunity.

70. Vectren willfully and intentionally, with malice, deliberate indifference, and/or reckless disregard of the ADA maintains attendance plans which fail to make exceptions for disabled persons, leading to disciplinary action and other adverse employment actions.

## REQUESTED RELIEF

WHEREFORE, Plaintiff, Loretta M. Duncan, requests relief from the Court consisting of all damages afforded by the law, including but not limited to:

a. Liquidated damages, including lost earnings, back pay, compensation, benefits, contributions to 401K plans, medical expenses, and other monetary loss suffered by Plaintiff;

b. Compensatory damages;

c. Expenses of litigation and reasonable attorney fees and costs;

e. Pre-judgment and post-judgment interest at the statutory rate on all sums recoverable;


g. Punitive damages to deter and punish Vectren and insure that future employees will not suffer the same discriminatory actions;

f. Reinstatement to her former position or, alternatively, front pay;

g. Order Vectren to provide in person training on the ADA and the FMLA, conducted by the EEOC, for all managers, supervisors, directors, and officers, and all human resource personnel;

h. Order Vectren to implement employment practices and policies that comply with the Americans with Disability Act;

i. Order Vectren to create and post on its intranet, forms and procedures for employees to request reasonable accommodations for physical and mental disabilities;

j. Order Vectren to provide to each new employee written copies of the pamphlets prepared by the EEOC for employees to understand their rights and obligations under the ADA and FMLA and to post a copy of same on its intranet; and

k. All other legal and/or equitable relief this order sees fit to grant.

*Loretta M. Duncan*
Loretta M. Duncan, pro se
9849 State Route 1078 N
Henderson, KY 42420
270-860-5002 phone

**DEMAND FOR JURY TRIAL**

The Plaintiff, Loretta M. Duncan, respectfully requests a jury trial as to all issues deemed so triable.

*Loretta M. Duncan*
Loretta M. Duncan, pro se